# UNITED STATES DISTRICT COURT

for the

Western District of Louisiana

_________ Division

RECEIVED

DEC - 1 2020

TONY R. MOORE CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT LOUISIANA
BY

Case No. 20-cv-1529 P
*(to be filled in by the Clerk's Office)*

Delis B. Pierre
Plaintiff(s)
*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

-v-

(Jury Trial Demanded)

Jerry Goodwin, Et Al. (see attached)
Defendant(s)
*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here.)*

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
(Prisoner Complaint)

**NOTICE**

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name: Delis Bernard Pierre (#498929)
All other names by which you have been known: "Kid", "Devil Dog", "Jar Head"
ID Number: #498929
Current Institution: David Wade Correctional Center ("DWCC")
Address: 670 Bell Hill Road
Homer (City) La. (State) 71040-2150 (Zip Code)

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. Make sure that the defendant(s) listed below are identical to those contained in the above caption. For an individual defendant, include the person's job or title *(if known)* and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

Defendant No. 1
Name: Jerry Goodwin
Job or Title *(if known)*: Regional Warden and DWCC Warden
Shield Number:
Employer: Louisiana Department of Public Safety and Corrections ("DPSC")
Address: 504 Mayflower St.
Baton Rouge (City) La. (State) 70802 (Zip Code)
☑ Individual capacity ☑ Official capacity

Defendant No. 2
Name: James (Jimmy) Leblanc
Job or Title *(if known)*: Secretary DPSC
Shield Number:
Employer: DPSC
Address: 504 MayFlower St.
Baton Rouge (City) La. (State) 70802 (Zip Code)
☑ Individual capacity ☐ Official capacity

Attachment to Pg. 1, "Defendants":

Jerry Goodwin, James Leblanc, Seth Smith, (Jane/John Doe), Tyrone Mays, Vincent Coleman, Bruce Young, Ryan Kimball, (John Doe) Pietsch, Louis Hamilton, Keanda Hay, Jane Doe McCutchen, Joel Lynn Williams, Michelle (Doe), Linda Camille Burch, Michelle Dauzat

---

Attachment to Pg. 2, B. "The Defendant(s)":

Defendant No. 5
Tyrone Mays - Individual Capacity
Assistant Warden/Security
DPSC
504 Mayflower St.
B.R., La. 70802

Defendant No. 6, Individual Capacity
Vincent Coleman, Colonel/Unit Supervisor
DPSC, 504 Mayflower St.
B.R., La. 70802

Defendant No. 7, Individual Capacity
Bruce Young, Major
DPSC, 504 Mayflower St.
B.R., La. 70802

Defendant No. 8, Individual Capacity
Ryan Kimball, Classification Officer (Captain at time of incident)
DPSC, 504 Mayflower St.
B.R., La. 70802

Attachment to Pg. 2, B. "The Defendant(s), (Cont.):

Defendant No. 9, Individual Capacity
(John Doe) Pietsch, Lieutenant
DPSC, 504 Mayflower St.
B.R., La. 70802

Defendant No. 10, Individual Capacity
Louis Hamilton, Sergeant
DPSC, 504 Mayflower St.
B.R., La. 70802

Defendant No. 11, Individual Capacity
Keanda Hay, Sergeant
DPSC, 504 Mayflower St.
B.R., La. 70802

Defendant No. 12, Individual Capacity
(Jane Doe) McCutchen, Sergeant
DPSC, 504 Mayflower St.
B.R., La. 70802

Defendant No. 13, Individual Capacity
Joel Lynn Williams, Nurse
DPSC, 504 Mayflower St.
B.R., La. 70802

Defendant No. 14, Individual Capacity
Michelle (Doe), Nurse
DPSC, 504 Mayflower St.
B.R., La. 70802

Defendant No. 15, Individual Capacity
Linda Camille Bunch, Doctor
DPSC, 504 Mayflower St
B.R., La. 70802

Attachment to Pg. 2, B. "The Defendant(s)" (Cont.):

Defendant No. 16, Individual Capacity and Official Capacity
Michelle Dauzat, Assistant Warden Medical Department
DPSC, 504 Mayflower St.
B.R., La. 70802

Defendant No. 3

Name: Seth Smith

Job or Title *(if known)*: Chief of Operations

Shield Number:

Employer: DPSC

Address: 504 Mayflower St.

Baton Rouge (City) La. (State) 70802 (Zip Code)

☑ Individual capacity ☑ Official capacity

Defendant No. 4

Name: Jane/John Doe

Job or Title *(if known)*: 2nd Step Designee

Shield Number:

Employer: DPSC

Address: 504 Mayflower St.

Baton Rouge (City) La. (State) 70802 (Zip Code)

☑ Individual capacity ☑ Official capacity

## II. Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A. Are you bringing suit against *(check all that apply)*:

☐ Federal officials (a *Bivens* claim)

☑ State or local officials (a § 1983 claim)

B. Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

Constitutional Amendments 1, 8, 14
Failure to Protect, Deliberate Indifference to Safety, Due Process, Unconstitutional Conditions of Confinement, Liberty Deprivation
Cruel and Unusual Punishment, Excessive Force (Assault and Agg. Battery), Denial adequate medical treatment and Deliberate Indifference to Serious Medical Needs.

C. Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

N/A

D. Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

All defendants acted in their official capacities and/or while exercising their responsibilities pursuant to state law although each abused and/or exceeded their authority or violated the law.

## III. Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

- [ ] Pretrial detainee
- [ ] Civilly committed detainee
- [ ] Immigration detainee
- [x] Convicted and sentenced state prisoner
- [ ] Convicted and sentenced federal prisoner
- [ ] Other *(explain)* ______________________

## IV. Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. If the events giving rise to your claim arose outside an institution, describe where and when they arose.

N/A

B. If the events giving rise to your claim arose in an institution, describe where and when they arose.

(Unit N4, C-tier, A-tier and Northside Infirmary)
David Wade Correctional Center on April 2, 2020 to present (ongoing)

C. What date and approximate time did the events giving rise to your claim(s) occur?

April 2, 2020 @ approx. 11:30 a.m. to present (ongoing)

D. What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

(See attached) - "Attachment to Pg. 5, IV., D."

## V. Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

Note: over 7 months since incident and left ribs still damaged (deformed and hurting, popping & crunching) Fracture/deformed ribs (left side), bruised ribs right side, bruises and abrasions all over body, swelling and bruising left side face/forehead, softball-sized knot on right side forehead, approx. 5-10 small knots on top, sides and back of head, 2 black eyes with busted blood vessels inside right eyeball, left calf severely traumatized w/ permanent scarring as of date (11/10/20), left ankle/foot blackened/brused solid around base and between toes & developed "edema", blood in stool, mental and emotional pain and suffering

## VI. Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

(See attached) - "Attachment to Pg. 5, VI "Relief""

Attachment to Pg. 5, IV, (D), "Facts of Claims":

PRELIMINARY STATEMENT

Plaintiff ("Pierre") arrived at DWCC on Jan. 21, 2020 and immediately started witnessing systemic abuse by prison personnel of offenders, especially those whom have mental health deficiencies. Abuses consist of excessive and unnecessary uses of force (i.e. chemical agents and physical), arbitrary abuses of power and blatant disregards for offenders' Constitutional rights guaranteed and the law. Many abuses are resulting in sheer torture and the administration, its employee's and the medical personnel are engaging in conspiratorial practices and acts to violate Constitutional rights, violate the law and then "cover up" the same thereafter. These concerted acts are making a mockery of the very system that is in place to protect us.

Pierre is a U.S. Marine Corps Veteran who, though not perfect, still maintains principles, ethics and morals; therefore, I opted to stand against these abuses and corruption by, first, bringing the wrongs to the attention of ranking and administrative personnel, second, by learning rules, policies and laws and ultimately, utilizing administrative and legal processes available to me. (I've also reached out to organizations and lawyers in attempts at addressing these abominable and horrific conditions but to no avail). Pierre quickly realized that DWCC, its employee's (including Head/Regional Warden Goodwin) and the DPSC are engaging in organized criminal activities, to include but not limited to the following: physically beating offender's with hands, feet and weapons (weapons including but not limited to chains, handcuffs, locks, boots and especially chemical munitions); utilizing chemical agents as a punitive measure instead of its intended purpose; utilizing suicide watch and strip cell as means of torture; falsifying reports to justify their illegal/unconstitutional behaviors; committing malfeasance in office on many levels; manipulating rules, policies and laws in order to maintain these abhorrent practices; refusing to provide adequate medical treatment and falsifying medical records (or failing to adequately document injuries) in order to cover up many atrocities; arbitrarily abusing their powers while allegedly providing grievance, administrative and disciplinary processes by running afoul of the rules, policies and procedures that circumscribe the same; retaliating on offender's for invoking their rights; tampering with and stealing personal and legal mail and unnecessarily censoring the same; committing perjury and fraud upon the

public and courts in attempts at covering up their acts and/or deceiving the same.

Pierre asserts that the case now before the court is but one example of his own personal abuse(s) endured at the hands of these tyrants, but assures you that whats transpiring within the confines of this prison and condoned by the DPSC is so regular that offender's, including myself especially, fear for our welfare and lives daily. Those whom "claim" to support and assist us (Advocacy Center and ACLU) are failing us on many levels and I openly call them out and question their motives, respectively and respectfully. I will present evidence to this Honorable Court to support my claims, my allegations, my contentions and my cause. It's time to hold accountable those who believe they are above the law and that time begins now before more harm is done ~ before more lives are lost. Its time for the truth(s) to be told and justice to prevail and throughout this process I will remain,

Semper Fidelis!

## FACTS UNDERLYING THE CLAIMS

1. The week leading up to 4/2/20 was filled with ongoing animocity between myself and Captain Kimball and Sgt. Hamilton because I had reported them (informal grievance) to other ranking officers for refusing to give us showers on C-tier (Unit NH) and then fabricating documents alleging we were refusing the same. The night shift Captain, (Soloman) had "got on to" Kimball and Hamilton so the 2 officers were making my time "harder."

2. On 4/2/20, Hamilton made repeated "insinuating" and threatening comments to me, suggesting he was going to "get me" by stating, "Be cool, I got something for you," and "I got you. I'm gonna show you," etc.

3. I told Hamilton I didn't like being threatened and that he was making me paranoid, but he continued.

4. My neighbor, Shawn Frances, informed me that Hamilton "was a crooked guard and will put something in [my] food." (Shawn knows Hamilton well because Shawn has been around Hamilton for years.)

5. I wanted to speak to a social worker about the problem but due to my last experience only weeks before of being maliciously and arbitrarily put on suicide watch without any clothes, no mattress and forced to endure freezing cold conditions on freezing cold, hard concrete for five days straight, I was leary of requesting their assistance.

6. I chose to start documenting what was transpiring by writing on paper what was transpiring as it was happening. (Note: I was also writing a letter to my sister, Tina Strambler, during this incident explaining everything that was going on and all that I had been enduring the past month at DWCC)

7. Hamilton continued antagonizing me and threatening me over 2 plus hours so I decided I would take my chances with mental health staff. I wrote down my intentions and packed all my property in case they forced me on suicide watch. ("watch")

8. At approx. 10:30-11:00 a.m. lunch was served. Hamilton placed my tray in cell and continued up tier without saying anything. I looked over my food carefully and decided I didn't think he would tamper with my food so I started to eat.

9. As Hamilton came back down tier (I'm in cell #2) he stops directly in front of my cell, looks at me and says, "How does your food taste?"

10. I placed my tray and cup on the floor, told him to "get the f*** away from my cell," and started banging my door in order to summon ranking officers.

11. Capt. Kimball arrived and I explained the entire situation to him as Hamilton mopped the tier. Hamilton then leaned up against the door jam of the door leading onto tier with the mop in his hand laughing as I finished expressing my dilemma.

12. I placed my tray and cup on tray hatch and Kimball took them and exited the tier.

13. As soon as Kimball left tier Hamilton started yelling, "Captain, he spit on me, he spit on me."

14. Kimball returned immediately and I informed Kimball that Hamilton was lying and requested Kimball look closely at my bars, area of floor leading to Hamilton and on Hamilton to ascertain that there was no spittle whatsoever and I pointed out the distance. (the bars are not regular vertical bars but a type that form small, approx. 1 1/2 x 1 1/2 square holes throughout)

15. Kimball exited the tier and then returned approx. 2-3 minutes later ordering me to "come to the bars to be restrained to be placed on "strip."

16. Strip-cell is a "behavioral management" policy that is arbitrarily abused to punish offenders for 30 day periods at a time whereas we are in a paper suicide gown without any personal property in cell whatsoever and only allowed to have a mattress after 9 p.m. at night until 5 a.m., if lucky.

17. I had just done 35 days straight (5 days "watch" and 30 days "strip")

and had only been off 7 days. I am 46 yr's. old and have all kinds of various ailments and injuries so being forced to live on freezing cold concrete during winter is torture in and of itself. Not a single problem and/or disciplinary infraction the entire time and they still make us do entire 30 days.

18. I refused to "come to the bars to be restrained" and requested to speak to the Major.

19. Kimball activated his body camera and ordered me repeatedly to comply but I refused, repeatedly requesting to speak to Major Young and I also utilized the time to tell my story to the camera so it would/could be clear that I wasn't a threat to myself, others nor security.

20. From my experience and witnessing, an offender would have ~~done~~ been "gassed down" already but Kimball didnt even have a can of chemical agents ("gas") on him. (It was determined later that Kimball was under investigation for using "gas" excessively and unnecessarily, therefore he wasn't able to administer gas at all at this time)

21. Kimball placed body camera on window sill in front of my cell and left tier. I continued to speak to the camera, telling of everything guards and rank have been doing to all offenders and how guards didn't like me for standing up against them the right way.

22. Kimball returned and it was later determined he left to call Major Young. Kimball kept repeating orders to "come to bars to be restrained" for sake of camera until Young arrived.

23. Young arrived and I immediately placed my hands outside bars to be restrained while explaining the situation. Young cursed me out telling me to "Shut the f*** up!" Young asked for the restraints, but none of the guards nor Kimball had any.

24. Young yelled at them to go get some restraints, all the while I continued telling my story. Young repeatedly ordered me to "Shut the f*** up," but I was speaking in a normal to low tone and professionally, knew I was fixing to be placed back on another 30-day "strip", so I persisted.

25. The restraints arrived and Maj. Young placed the handcuffs with "black-box" on my wrists, the door was opened, the waste-chain was placed around waste and handcuffs secured thereto with pad lock and then ankle restraints ("leg irons") were placed on my feet.

26. I was escorted off tier into lobby where I was ordered down onto

my Knees and facing the wall.

27. Kimball, Sgt. Hay and Sgt. Hamilton removed all my property from my cell, placing it inside the disciplinary court room where property is stored during times such as this.

28. I continue speaking to Young, attempting to prove my case but he starts pacing back and forth behind me with a riot-sized can of "gas" in his hand. I've witnessed enough since arriving at DWCC only a few months prior to this incident to know that Young is fixing to gas me and is only looking for that "perfect" opening to "sneak" me in order to do the most harm, so I tell Young I know what he's fixing to do and to activate his body-camera.

29. Young activated his body camera and started stating, "Hold the noise," repeatedly. (this is what officers do to justify their use of gas)

30. I told Young that I knew he was fixing to gas me so to "go ahead and get it over with."

31. While continuing to pace back and forth, Young finally "snuck" me by dispersing gas to my right eye, side of face and head.

32. I suffered the consequences of the gas for approx. 5-10 minutes while still on my knees, fully restrained, facing the wall and without any means to protect or clean myself. Nurse Phillips arrived and flushed my eyes out.

33. Young finally asked if I wanted a shower and upon confirmation I was raised to my feet and escorted back on C tier where I was residing. My mattress was on floor in front my cell, my cell door was open and cell totally cleaned out of all property in preparation for my placement on "strip."

34. I'm literally starting to get emotional knowing that I'm about to be forced to endure another 30 days on concrete. Officers are "guiding" me to shower because I can't see too well and have "snot" and "spit" leaking uncontrollably from my nose and mouth.

35. Upon arriving at shower my "leg irons", padlock, black box and waste-chains are removed and I am placed inside shower stall with door being closed and locked behind me.

36. I place my hands through the "slot" in door in order to have handcuffs removed when I hear (and partially see) Hamilton come right in front of me and state, "I told you I was going to get you."

~~36~~ 37. I lost control of my bearings and spit the gas out of my mouth into

Hamiltons face. At this time I was distraught and in a manic and desperate state of mind. (unstable also due to inadequate mental health medications)

38. Kimball approached me stating, "We're fixing to beat the f*** out of you," as he removed his wristwatch and placed it in his pocket.

39. The door was opened and without any resistance I allowed the leg-irons and other full restraints to be reapplied and then I was escorted off the tier and placed back on knees in same spot in lobby as before.

40. Young, Kimball, Pietsch and Hamilton started removing all of their radios, body cameras, watches, pens out of shirt pockets and other miscellaneous, loose items from their persons and uniforms while placing them inside of the "Key" with Sgt. McCutchen.

41. Hay and other officers started putting "prefashioned" curtains over all of the windows and doors to all of the surrounding tiers as they also kept going in and out of the disciplinary court ("d.b.") room where my property was stored. (It was later surmised that they were "preparing" the room)

42. The officers approach me and lift me to my feet but I know there are no cameras in d.b. room so I fell to the floor in lobby in hopes the lobby cameras would record the scene.

43. I was drug by the officers to the room and due to their "aggressiveness" I was back on my feet as I entered the room and since Kimball had been playing the most aggressive role thus far I chose to keep my eyes on him as much as possible and thats when I seen him out corner of my eye draw his arm/fist back and start to swing at the back of my head.

44. I immediately fell to the floor face down causing Kimball to miss, but he followed me down and started punching me in the back of my head repeatedly, causing my forehead to bounce off of the floor.

45. All the other officers (Hamilton, Pietsch and Young) started attacking me from all sides and angles, punching, kicking and stomping me all over my body, legs, arms, etc. as I struggled to work the chains up my side, pulling my hands up to cover my face from the blows and stop my face and head from bouncing off of floor and to protect my teeth.

46. Young approached my right side and wedged the nozzle of a "riot-sized" can of "gas" into my right eye socket and shot high-pressured chemicals into my eye and onto side of my face and head.

47. I turned my head to the left and at some point in time I opened

my eyes and saw Kimball and Hamilton holding my left leg out exposing the inside of my ankle and foot so that Pietsch could strike the area with a pair of handcuffs, black box and pad lock attached to a waste chain.

48. During another time I saw Kimball holding my left leg in his hands while repeatedly punching the back of my left calf.

49. The gas in the air and closed confinement started affecting the officers so the beating died out whereas Kimball stood back and with one last decisive blow, Kicked me full force in the left side of my rib cage, lifting me off the ground and causing me to scream out loud for the first time during this ordeal. (My ribs are now "deformed" because of this)

50. I am lifted to my feet, barely able to stand so officer's support me under my arms and as I'm turned around I see Hay staring through window of door with his hand on the door knob waiting for officers to tell him to open door.

51. I'm escorted back to same position as before in the lobby and as I'm placed on my Knees I cannot support my weight due to the pain and I collapse to the floor.

52. All officers then grab bleach bottles, rags, mops and red hazardous bags and start cleaning the d.b. court room. I see them placing rags, towells and sheets (from my property and other offenders' property that got contaminated) inside the "red" bags and carrying those bags outside the unit for disposal.

53. I am assisted back to my feet and escorted back to the room by Young and upon entering, Kimball walks in. I get paranoid and start to resist a little but Young assures me its "over with" and they "aren't going to do me anything" more.

54. Young and Kimball remove all my restraints and then all of my clothing while holding me up and then place a paper suicide gown around me. ~~55. Upon~~ Then all the restraints were reapplied.

55. Upon exiting the room Nurse Joel was on scene asking me if I was alright. I explained to him I thought my ribs were broke and he told Young I was fine and started to walk away.

56. I told Joel that I was a Marine who had been through alot, played sports all my life and rodeo'ed most of life so I Knew "injuries" and my body and if he didn't do his job and help me that I would

hold him accountable and Joel told Young to take me to the clinic.

57. Young got mad because now he had to take restraints back off and re-dress me in which he and Kimball did so back in d.b. room.

58. Young and Kimball then escorted me to clinic, forcing me to walk entire way while supporting/assisting me from both sides.

59. Colonel Coleman was waiting outside of clinic and walked inside with us as I was seated in a chair.

60. Coleman approached me from behind, whispering in my ear, "Spit on the right one and see what happens to you," as he started laughing. (This was not a question, but a threat)

61. I was assessed again by Joel and then Nurse Michelle. I explained to Michelle what had transpired and it was later determined that no documentation of my allegations or other injuries were made.

62. My "lungs were clear" so I was sent back to my unit but this time I was placed on A-tier (#7) and was not given or offered a shower.

63. My jumpsuit was taken and I remained in this predicament for the next 30 days.

64. The following day (4/3/20) I was taken back to clinic to see Dr. Bunch whereas she pushed against my ribs causing them to shift "pop". She immediately stated, "Theres no doubt in my mind that your ribs are broken but due to the Coronavirus we can't send you to the hospital because its not life-threatening. Its going to take awhile for x-rays because our technician is 'contract' and we can't take any risks."

65. I informed Bunch of the "strip" status and requested that she intervene and override security and order them to at least give me my mattress because I can't lay on concrete due to my conditions and she stated that it was "a security issue" and I "didn't need to be laying down anyway due to risk of pneumonia."

66. I was returned to my unit and received ~~at~~ no treatment other than Naprosen for 2 wks. (maybe 30 days, I forget, but it didnt help)

67. Up until the date of filing my Administrative Remedy Procedure ("ARP" or "grievance") on 6/1/20 I submitted ~~no~~ 13 plus sick-calls in an attempt at obtaining medical assistance for my various injurious but was ignored.

68. I received my first x-rays on May 21, 20, 7 weeks after incident.

69. I was scheduled for additional x-rays the following week (5/28) but

was not taken.

70. I went for next X-ray on 6/2 and I asked technician if she could give me any information regarding injuries and she stated, "all I can say is the doctors see something that they want a better view of."

71. At this time Pierre would like to inform the Court that he has reason to believe and is of the belief that the medical department and its personnel are engaging in conspiratorial acts to cover up this crime and at the time of the filing of the "ARP" regarding the vicious beating I did not fully understand how truly corrupt this entire administration was and did not fully "complain" or "notify" the prison of the ongoing denial of adequate medical treatment and deliberate indifference to my serious medical needs. Upon realizing the seriousness of the situation I filed another ARP on 6/16/20 pertaining specifically to the medical issues/deficiencies and said ARP is at the final "step", having been denied at the 1st step already.

72. I understand the "technicalities" of the exhaustion requirement of the PLRA and although these medical complaints are a part of the original incident I chose to exhaust administrative remedies seperately in order to protect my rights and interests, therefore I will amend this complaint upon exhaustion of the same under the "continuation doctrine" for these ongoing acts relate back to and are ongoing to the original incident.

73. I respectfully direct this Court's attention to my motion for temporary restraining order and preliminary injuction enclosed herewith for ~~a~~ better comprehensive insight as it pertains to this matter.

74. After my beating on 4/2 I wrote a letter to Warden Goodwin on 4/5 detailing the events of 4/2. In this letter I specifically requested to press criminal charges on those involved, assistance in obtaining adequate medical care and his intervention in allowing me a mattress for I had been forced to sleep sitting up for days due to my extensive injuries.

75. I received no response nor any assistance from Goodwin.

76. I actually filed my first ARP here at DWCC on 4/12/20 regarding this incident but it went unanswered. (dilatory tactics by admin.)

77. I mailed a copy of the same ARP to 2nd Step (Secretary James Leblanc and Chief of Operations, Seth Smith) and received no response and/or assistance.

78. Ultimately I sent a cover letter and a new ARP to my sister,

Tina Strambler, on 6/1/20 and upon arrival she mailed it to DPSC Headquarters, Sec. James Leblanc and Chief of Op's. Seth Smith, "certified".

79. This ARP was remanded back to DWCC for processing into the "1st Step" for further handling, apparently deeming it of an "nonemergecy" and/or "non-sensitive" nature as is always the case with the DPSC and its failure to act.

80. On April 19, 2020 I wrote Ass. Wrdn. Dauzat a letter explaining the severity of my injuries, the incident leading to those injuries and the lack of adequate medical care pertaining to my injuries and requested her intervention and assistance. (This letter went unanswered)

81. On April 23, 2020 I wrote a letter to Ass. Wrdn. Mays begging him to discontinue the "strip cell" status and/or at least authorize me to have a mattress but to no avail.

82. On April 23, 2020 I was called to front office to speak with Warden Goodwin (along with Ass. Wrdn. Baird, Ass. Wrdn. Mays and Colonel Vincent Coleman) about incident. Wrdn. Goodwin witnessed my injuries (black eyes, swollen leg/ankle etc) but showed no interest to my story. In fact, Goodwin simply "doodled" on a piece of scratch paper the entire time and then informed me that I would be charged with battery on a officer. (I was formally charged soon thereafter).

83. I asked Goodwin to at the least discontinue "strip" status due to my injuries at which time he stated, "When your 30 days is up they will review you and may let you off." I informed him that I hadn't caused a single problem in over 3 wks. and was suffering but he showed no concern whatsoever.

84. I wrote another letter to Wrdn. Dauzat on May 6, 2020 begging for intervention and assistance in regards to inadequate medical treatment and my belief that medical dept. and Dr. Linda Bunch were conspiring with security to "cover up" incident. I received no response.

85. To date (11/16/20) from 4/2 I have submitted over 30 plus sick-calls requesting to see a doctor in regards to my ribs and leg/ankle but only saw Dr. Bunch one time on 4/3 regarding ribs and on 6/23 regarding leg. I tried to speak to Bunch regarding ribs on 6/23 and she stated, "You're only here for your leg," and refused to assess ribs.

86. Today is 11/16/20 and my left ribs are still causing a lot of pain, to include "popping" and "crunching" amongst other things.

87. All Nurses who do routine and emergency sickcalls tell me all they can do is "turn the sickcalls in but its up to the doctor to see you."

88. From April 2, 2020 to May 2, 2020 all of my incoming mail was kept from me. when I was taken off of "strip" Sgt. Dill delivered twenty two (22) pieces of personal mail to me on May 22, 2020, nightshift.

89. Pierre asserts that he has (2) two active criminal cases and (1) one active civil case in the Middle District and 5th Circuits, respectively, and has filed numerous motions and briefs from April 2020 to present.

90. I have utilized the only means for sending Indigent/Legal mail which includes placing the mail with accompanying and completed withdrawal form in the hands of my Unit Officer for placing into the prison mail system for further handling.

91. No legal mail has arrived at its destination from April 2020 to present.

92. I've written numerous letters to Ms. Judy Lofton (Inmate Banking) inquiring into these matters and her last response to me on Oct. 11, 20 states that she has "received nothing from [me] since May 12, 2020."

93. DWCC administration is stealing my legal mail in attempts at ~~tooto~~ thwarting my attempts at seeking access to the courts.

94. On Sept. 29, 2020 I attempted to get Ass. Wrdn. Mays to sign a "receipt" as a witness to my sending a motion to the 5th Circuit and a copy thereof to the District Attorney but he refused, stating "I'm not putting my name on anything," and "no one has a reason to be messing with your mail."

95. I explained to him how my last 8 plus pieces of legal mail never left this prison and he stated, "Give it to the Sarge (Sgt. Hay standing next to him whom also refused to sign/witness my "receipt") and I'll make sure nothing happens to it and the problem is addressed."

96. After inquiring into this mail approx. 2 wk's. later it was found to never have been "processed" nor leave prison.

97. Upon speaking to Sgt. Hay about it he stated, "I know for a fact it left this unit because several offenders complained to Wrdn. Mays about their legal mail not going out on the same day and he took all yall's mail 'up front' personally."

98. Due to being an "indigent" offender I am unable to purchase postage and/or writing material from canteen but several offender's have loaned me postage on several occasions so that I could attempt to

send my legal mail to the courts in the past two to three wk's. and I have done so by also using other offenders' names (as I am doing with this "Complaint") and the courts have receive the same.

99. I wrote a letter to Wrdn. Goodwin on Nov. 13, 2020 regarding these issues and received no response.

100. I wrote a letter to MSgt. Judgeware in the "mailroom" on 10/28/20 regarding these issues and received no response.

101. On or about Sept. 14, 2020 I received "discovery" from court appointed counsel regarding the "battery on a officer" charge I received as a result of this incident complained of herein and its at that time that I was made aware of Young, Kimball, Hamilton and Hay falsified documents via Unusual Occurrence Reports ("UOR") alleging an entirely fabricated incident that never even ~~occurred~~ occurred.

102. It was further noticed that Lt. Pietsch (officer who beat me with chains, lock, blackbox and handcuffs) was not mentioned in any reports, as if he was never even present at any time during entire incident.

103. I requested personally and in writing on numerous occasions that all unit and body cameras be reviewed to ascertain the facts stated herein and requested pictures be taken of my entire body but received no response and/or assistance.

104. On Aug. 10, 20 I wrote a letter to Ms. Tylyn Cotten of "Medical Records" requesting assistance in releasing designated medical records and X-rays to my family member, sister, Tina Strambler.

105. I received a response with a medical release form and "instructions" on how to proceed.

106. I completed the medical authorization release form and sent it back to Ms. Cotten and wrote my sister, Mrs. Strambler, informing her to call up here to DWCC, Ms. Cotten, and assist in any way in order to expedite matters.

107. Mrs. Strambler notified me that she felt "they were giving [her] the 'runaround' by putting her on "hold" and/or transferring her call repeatedly without any final assistance.

108. On Oct. 11, 20 I wrote another letter to Ms. Cotten informing her that all pertinent documentation has been completed and requesting assistance in remedying this request for medical release and she responded stating

that she had already made copies of all requested documents and sent to "NIKKI" for further handling.

109. I notified Mrs. Strambler that I believed Ms. Cotten was referring to NIKKI McCoy who is the "Legal Liaison" and requested that Mrs. Strambler contact MS. NIKKI McCoy for further inquiry, information and/or assistance.

110. Mrs. Strambler notified me the following week (on/about first week of November 2020) that she made contact with Ms. McCoy who informed her that she "couldn't release the documents until Wrdn. Goodwin signed off on the invoice" and that they would contact Mrs. Strambler at that time to handle payment for the same.

111. To date my sister has not been contacted nor has the specified medical documents/records been released.

112. Pierre is of the "good-faith" belief that DWCC is intentionally refusing to release these medical records in an attempt at furthering their deceitful and unlawful acts and hiding extent of Pierres' injuries.

113. Pierre has been forced to suffer at the hands of a very corrupt and "organized" administration and continues to be tortured daily by absolute denial of any medical assistance and/or professional assistance from administrative personnel.

114. I have written letters to the Secretary of DPSC along with my ARP's requesting lie detector tests and cameras reviewed but to no avail.

115. I fear for my welfare and my life due to what I continue to witness regularly, the treatment I receive regularly and the desperation of a very malicious administration and have endured yet another "gassing and beating" at the hands of security as recent as August 17, 2020 while I was defenseless and in full restraints with yet another "cover up" ensuing thereafter by security.

I, Delis Bernard Pierre, do attest under penalty of perjury and fear of the Almighty God that the contents mentioned herein are the truth and nothing but the truth and have evidence and witnesses (officer's and offender's) that will support the same.

STATE OF LOUISIANA
PARISH OF CLAIBORNE

Semper Fidelis! (usmc veteran)

[signature] 498929

on this 19th day of November, 2020. Delis Pierre #498929

Attachment to Pg. 5, "Relief" (and Claims for Relief)

Claims for Relief:

1) The actions of deliberate indifference of Jerry Goodwin, James Leblanc, Seth Smith ~~and~~ Jane/John Doe and Michelle Dauzat substantiate requisite causal connexity between supervisory officials and ~~defendant~~ plaintiff. The Supervisory officials affirmatively and wrongfully participate in the act of breaching their duties specifically imposed on them by State and Federal law failing to intervene to prevent deprivation of Plaintiff's constitutional rights in violation of the 14th and 8th Amendments of the U.S. Constitution.

2) The actions of Jerry Goodwin, James Leblanc, Seth Smith and Michelle Dauzat and Jane/John Doe deliberately and systematically denying legitimate grievances/complaints of Plaintiff in violation of Due Process under the provisions of Corrections Administrative Remedy Procedure ("CARP") and their actions are grossly disproportionate to the need to comply to public and departmental policies and are unreasonable during commissions of indifference to Plaintiff's safety and right to be free from cruel and unusual punishment, blatantly trampling over clearly established legal rights in violation of the 8th and 14th Amendments to the U.S. Constitution.

3) The actions of Jerry Goodwin and James Leblanc amount to the demonstration of deliberate indifference to the constitutional rights of Plaintiff and as head supervisory authorities fail to adequately train and/or discipline officials and staff members which hold them vicariously liable for the conduct of subordinates' cause of action of cruel and unusual punishment, denial of due process and failure to protect and deliberate indifference.

4) The failure of defendants Jerry Goodwin, James Leblanc, Seth Smith, Jane/John Doe and Michelle Dauzat, after official notice of the complaint, to curb the known pattern of abuse wrongfully inflicted upon Plaintiff and failing to authorize disciplinary action against officer's and employee's who violated Plaintiff's rights and the regulations relating to their work and conduct prohibited by law and their deliberate indifference to the needs and safety of Plaintiff constitutes cruel and unusual punishment and the malicious misconduct to deny merit of the complaint bears character that result in the impairment and disruption of public service and duty.

5) The actions of defendants Bruce Young, Ryan Kimball, (John Doe) Pietsch and Louis Hamilton amount to deliberate indifference to Plaintiff's safety, excessive force with malicious and sadistic intent and wanton infliction of pain and

suffering and cruel and unusual punishment resulting in malicious infliction of injury, physical and emotional.

6) The actions/inactions of Keanda Hay and Jane Doe McCutchen amount to deliberate indifference to Plaintiff's safety resulting in a failure to protect when they failed to stop and/or intervene when Plaintiff was being beaten and/or report the incident thereafter.

7) The actions of Young, Kimball, Pietsch, Hamilton, Hay and McCutchen amount to deliberate indifference and failure to protect when they failed to report incident and falsified reports to help "cover up" incident.

8) The actions of Goodwin, Mays and Coleman amount to deliberate indifference when they impeded the investigation by allowing falsified reports and testimony to influence the investigation.

9) The actions of Goodwin, Mays and Coleman amount to deliberate indifference and violation of due process when they compelled plaintiff to remain on "strip" cell due to their arbitrary abuse of power and unconstitutional use of a policy they "claim" to be for "management purposes."

10) The actions of Linda Bunch, Joel Lynn Williams, Michelle (Doe) and Michele Dauzat demonstrates deliberate indifference to Plaintiff's safety, serious medical needs and physical condition constituting cruel and unusual punishment when they failed to ensure that all of Plaintiff's injuries were documented properly and adequate medical care given for the same, notwithstanding their failure to properly notify Plaintiff as to the true extent of his injuries.

11) The actions of Linda Bunch demonstrates deliberate indifference and failure to protect when she committed malfeasance in office, (engaging in conspiratorial practices/acts to cover up Plaintiff's injuries by failing to perform her assigned duties professionally and ethically), by providing/documenting deliberately false/misleading information resulting in cruel and unusual punishment and the ~~unwanton~~ infliction of pain and suffering and ultimately torture.

## Relief Requested

THEREFORE, PLAINTIFF RESPECTFULLY PRAYS that the Court grant the following relief:

A. Issue a Declaratory Judgment Stating that:

1) The failure to supervise, properly train, discipline and deliberate indifference

of the defendants Jerry Goodwin, James Leblanc, Seth Smith and Jane/John Doe and their failure to take action to curb the abuse violated Plaintiff's rights under the 8th and 14th Amendments of the U.S. Constitution and constitutes malfeasance under State law (including negligence)

2) Defendant's Bruce Young, Ryan Kimball, (John Doe) Pietsch and Louis Hamilton's use of excessive force (i.e assault and battery and aggravated battery) on Plaintiff's person and deliberately forcing Plaintiff to suffer injury violated Plaintiff's rights under Cruel and unusual punishment of the 8th Amendment.

3) Defendants Keanda Hay and Jane Doe McCutchen's deliberate indifference to Plaintiff's safety for failing to intervene, stop and/or report officers' use of excessive force, battery and aggravated battery on Plaintiff constitutes cruel and unusual punishment in violation of Plaintiffs 8th Amendment rights and constitutes malfeasance and negligence under State law.

4) Defendants Goodwin, Mays and Coleman deliberate indifference to Plaintiff's safety for failing to take corrective action and impeding the investigation by "turning a blind eye" to the actions of subordinates violated Plaintiff's right to be free from Cruel and unusual punishment and continues to place Plaintiff in imminent danger.

5) Defendants Joel Lynn Williams, Linda Camille Bunch, Michele Dauzat and Michelle (Doe) deliberate indifference to Plaintiff's safety and serious medical needs for failing to document, treat and report Plaintiff's injuries constitutes Cruel and unusual punishment in violation of Plaintiffs 8th Amendment Rights.

B. Award Compensatory Damages in the Following Amounts:

1) ($ 25,000) Twenty Five Thousand Dollars severally against defendant Jerry Goodwin for the punishment, ~~and~~ physical and emotional injury and cruelty resulting from deliberate indifference and denial of due process in connection with Plaintiff's mistreatment and injuries and for his maintaining a custom and practive of being deliberately indifferent to offenders' safety by promoting and/or condoning uses of unnecessary and excessive force by his employee's and failing to take corrective and/or disciplinary actions for such behaviors.

Furthermore, Goodwin is the Warden employed at DWCC for the State of Louisiana and the DPSC and is responsible for the supervision and discipline of all employee's. Goodwin maintains an active role in circumventing policies and law and is the leading force behind the cruel and unusual punishment asserted herein.

2) Defendant's James Leblanc is the Secretary of the DPSC, Seth Smith is the Chief of Operations and Jane/John Doe is the "2nd Step Designee", all employed for the State of Louisiana, and is responsible for reviewing all administrative appeals/complaints filed by offenders, the supervision and safety of offenders and supervision and discipline of employees and Plaintiff should be awarded Ten Thousand Dollars ($10,000.00) severally against these three for the punishment and emotional and physical injury and cruelty resulting from deliberate indifference and denial of due process in connection with Plaintiff's mistreatment and injuries.

3) Defendants Tyrone Mays, Vincent Coleman and Michele Dauzat are responsible for the supervision and discipline of subordinates and Plaintiff should be awarded ($20,000.00) Twenty Thousand Dollars severally against these for the punishment and emotional/physical injury and cruelty resulting from their deliberate indifference and denial of due process in connection with Plaintiff's mistreatment and injuries. (Coleman and Mays are directly involved with the conspiratorial acts of covering this incident up and regularly commit malfeasance in office)

4) Defendants Bruce Young, Ryan Kimball, John Doe Pretsch and Louis Hamilton are responsible for the supervision and safety of offenders and Plaintiff should be awarded ($100,000.00) One Hundred Thousand Dollars severally against these for their deliberate indifference, failure to protect and denial of due process in connection with Plaintiff's mistreatment (and punishment for the emotional and physical injury, pain and suffering and cruelty to Plaintiff.)

5) Defendants Keanda Hay is responsible for the supervision and safety of offender's and Plaintiff should be awarded ($15,000) Fifteen Thousand Dollars severally for his deliberate indifference, failure to protect, denial of due process, ~~and~~ falsifying documents and efforts at cleaning/covering up crime scene and punishment for the emotional/physical injury, pain and suffering and cruelty to Plaintiff in connection with Plaintiffs mistreatment.

6) Defendants (Jane Doe) McCutchen is responsible for the supervision and safety of offender's and Plaintiff should be awarded ($5,000) Five Thousand Dollars severally for her deliberate indifference, failure to protect and failure to report incident which led to Plaintiff's emotional/physical injuries, pain and suffering and cruelty in connection with Plaintiffs mistreatment.

7) Defendants Joel Lynn Williams and Nurse ~~Jat~~ Michelle (Doe) are nurses responsible for the care and safety of offender's and Plaintiff should be awarded ($5,000) Five Thousand Dollars severally for their deliberate indifference

to Plaintiff's serious medical needs and safety by failing to adequately document, treat and report injuries sustained in connection with Plaintiffs mistreatment resulting in physical/emotional pain and suffering and impeding investigation into incident.

8) Defendant Linda Camille Bunch is the Medical Doctor employed at DWCC and is responsible for providing adequate medical treatment and care to offender's (and safety) and Plaintiff should be awarded ($100,000) One Hundred Thousand Dollars ~~for~~ severally for the punishment and physical/emotional injuries Plaintiff sustained as a result of her malicious and sadistic acts of deliberate indifference to Plaintiffs serious medical needs and safety by failing ~~to treat~~ adequately, document and/or report injuries and incident in connection with Plaintiff's mistreatment resulting in physical/emotional pain and suffering and impeded the investigation by providing false medical information. As a medical professional Dr. Bunch's standards of ethics is higher and failing to perform her ethical duties caused a wanton infliction of pain and suffering that still persists to date due to her failure to act accordingly.

9) Defendant Michele Dauzat is the Assistand Wrdn. of Medical Department and is responsible for the supervision of health care providers and the care, treatment and safety of offender's. Plaintiff should be awarded ($50,000) Fifty Thousand Dollars severally for the punishment and physical/emotional injuries and pain and suffering Plaintiff sustained as a result of deliberate indifference in connection with Plaintiff's mistreatment and inadequate medical care.

C) Award any and all damages and relief owed Plaintiff as a Matter of Law. (ie Prospective Relief via Preliminary Injunction/TRO enclosed herewith)

D) ORDER defendants to Pay all Filing Fees and Court Costs Incurred As A Result of This Action, Independent of Damages Awarded Plaintiff By Defendants Severally.

CERTIFICATION AND S.S. AFFIDAVIT

I hereby declare under penalty of perjury that the aforementioned "Statement of Claim" and "Facts Underlying Claim" are true and correct to the best of my knowledge and good-faith belief.

STATE OF LOUISIANA

PARISH OF CLAIBORNE

on this 18th day of November, 2020.

[signature] 498929

Delis Pierre #498929

(Affiant and Plaintiff)

## VII. Exhaustion of Administrative Remedies Administrative Procedures

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures. Your case may be dismissed if you have not exhausted your administrative remedies.

A. Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

- [x] Yes
- [ ] No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

David Wade Correctional Center

B. Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

- [x] Yes
- [ ] No
- [ ] Do not know

C. Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

- [x] Yes
- [ ] No
- [ ] Do not know

If yes, which claim(s)?

All claims stated herein

D. Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

- [x] Yes
- [ ] No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

- [ ] Yes
- [ ] No

N/A

E. If you did file a grievance:

1. Where did you file the grievance?

(ultimately had to send to sister, Tina Strambler, and send "certified" to DPSC Headquarters on June 1, 2020 before finally getting "accepted" on 6/24/20.)

Warden Jerry Goodwin, DWCC first time on April 12, 2020 (refused to respond)

2. What did you claim in your grievance?

Impeding and/or interfering w/ the investigation
Excessive Force, assault and battery, aggravated battery, deliberate indifference, failure to protect, cruel and unusual punishment, torture, denial adequate medical treatment, falsifying government documents, malfeasance in office, retaliation for seeking redress (formally and informally), tampering w/ surveillance equipment,

3. What was the result, if any?

(ARP No. DWCC-20-0383)

"Denied"

4. What steps, if any, did you take to appeal that decision? Is the grievance process completed? If not, explain why not. *(Describe all efforts to appeal to the highest level of the grievance process.)*

Appealed to 2nd (Final) Step at DPSC Headquarters, Secretary James Leblanc

F. If you did not file a grievance:

1. If there are any reasons why you did not file a grievance, state them here:

N/A

2. If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

Although exhaustion is not complete regarding more specific medical and mail deficiencies, I have written repeated letters to Asst. Wrdn. Dauzat, Wrdn. Goodwin, Ass. Wrdn. Mays, Chief of Op's Seth Smith and ~~All~~ various other institutional personnel between 4/5/20 to present providing very detailed information and requesting assistance and intervention and have received nary a response from all of the above.

G. Please set forth any additional information that is relevant to the exhaustion of your administrative remedies. Pierre has exhausted the ARP process pertaining to actual beating incident but due to unexpected additional claims arising thereafter (but still pertaining to), regarding absolute refusal to treat injuries adequately in attempts at med. dept. and its Personnel along with the administration "covering up" the incident (as well as stealing my legal mail) Pierre has another ARP regarding those claims at 2nd step and will amend this complaint to reflect additional claims once exhausted.

*(Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*

## VIII. Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

- [x] Yes
- [ ] No

If yes, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

Middle District, dismissed on 6/26/15 (Docket/Case No. 14-0748-JJB-RLB)

A. Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☐ Yes

☑ No

B. If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1. Parties to the previous lawsuit

   Plaintiff(s) N/A

   Defendant(s) ______

2. Court *(if federal court, name the district; if state court, name the county and State)*

   ______

3. Docket or index number

   ______

4. Name of Judge assigned to your case

   ______

5. Approximate date of filing lawsuit

   ______

6. Is the case still pending?

   ☐ Yes

   ☐ No

   If no, give the approximate date of disposition. ______

7. What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

   ______

C. Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

☑ Yes

☐ No

D. If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1. Parties to the previous lawsuit

   Plaintiff(s) Delis Pierre

   Defendant(s) Christopher James, Et al.

2. Court *(if federal court, name the district; if state court, name the county and State)*

   Middle District

3. Docket or index number

   14-0748

4. Name of Judge assigned to your case

   U.S. Magistrate Judge Richard L. Bourgeois, JR.

5. Approximate date of filing lawsuit

   12/1/14,

6. Is the case still pending?

   ☐ Yes

   ☑ No

   If no, give the approximate date of disposition 8/12/15

7. What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

   dismissed

Additional Lawsuits:

D.

1. Delis Pierre vs James Leblanc, et al.
~~Et~~

2. Middle District Court

3. Docket No. 3:20-cv-00182-JWD-RLB

4. U.S. Magistrate Judge Richard L. Bourgeois, JR.

5. Filed March 13, 2020

6. Case is still Pending

7. Ongoing litigation

## IX. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 11/10/2020

Signature of Plaintiff

Printed Name of Plaintiff: Delis Pierre

Prison Identification #: 498929

Prison Address: 670 Bell Hill Rd.

Homer (City) La. (State) 71040-2150 (Zip Code)

### B. For Attorneys

Date of signing:

Signature of Attorney: N/A

Printed Name of Attorney

Bar Number

Name of Law Firm

Address

City State Zip Code

Telephone Number

E-mail Address

TO: The Honorable Clerk of Court
U.S. Western District
300 Fannin St., Ste. 1167
Shreveport, La. 71101-3083

FROM: Delis Pierre #498929
DWCC, N4-D2
670 Bell Hill Rd.
Homer, La. 71040-2150

RECEIVED
DEC - 1 2020
TONY R. MOORE CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT LOUISIANA
BY

RE: Delis Pierre v Jerry Goodwin, et al. (new-filing)

DATE: November 1, 2020

Dear Clerk,

Please find enclosed my §1983 Complaint for filing into this court.

Please excuse the few pieces of "used" paper I was forced to utilize. I am truly limited to only 5 pieces of short and long typing paper per month.

Thank you for your time, patience and assistance regarding this matter.

docket sheet sent
12/2/2020 jc

Can you please send me a confirmation of receipt with assigned case number? Thanks!

Sincerest regards,

Delis Pierre #498929

ENC: 1 §1983 Complaint @ 33 pages
1 Forma Pauperis App. @ 6 pages

P.S.

Please disregard the name of sender and ensure the record reflects my information. Unfortunately my present circumstances call for such measures to be taken. (see Complaint at ¶¶ 88-100 for further insight)